**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Trustees of the Chicago Plastering Institute Pension Trust, the Chicago Plastering Institute Health and Welfare Trust, the Journeymen Plasterers' P.&B. Society Local No. 5 Apprentice Fund, the Chicago Plastering Institute, by and through John Manley and as agent for the Chicagoland Construction Safety Council and the Journeymen Plasterers' Protective and Benevolent Society of Chicago Local No. 5, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05 C 5669 |
| vs. | ) ) | Magistrate Judge Susan E. Cox |
| R.G. Construction Services, Inc., | ) ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Defendant, RG Construction Services, Inc. ("RG") has filed a motion for relief from this Court's order of June 23, 2009, pursuant to Federal Rule of Civil Procedure 60(b)(6) [dkt 123]. The motion also requests an extension of time to file its response to plaintiffs' supplemental submission on damages. RG's Rule 60(b)(6) motion is denied. RG is, however, given an additional two weeks from the date of this order to file its response to plaintiffs' submission on damages.

On June 16, 2009, this Court entered its findings of fact and conclusions of law on RG's liability to plaintiffs for contributions owed to employee benefit plans. Plaintiffs then filed a motion requesting that the Court clarify that the dues authorization issue (that plaintiffs could collect dues only on behalf of plasterers that had signed dues authorizations) would be limited to the Journeymen

Plasterers' Protective and Benevolent Society of Chicago Local No. 5's ("Local 5") claim for dues and not the ERISA-fund plaintiffs' (hereinafter referred to as the "Funds") claims for contributions. The Court agreed and, on June 23, 2009, entered a minute order stating that,

> defendant is liable for all delinquent contributions in the audit for work performed within Local 5's jurisdiction, regardless of whether the work was performed by a Local 5 member. The Court understood RG's lack of standing argument, as reflected in the June 16, 2009 Order, to refer only to Local 5's claim for dues on behalf of employees that had not signed dues authorizations.[1]

RG now submits that a recent case decided by the United States Court of Appeals for the Seventh Circuit, *Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering Company*,[2] should change the Court's ruling. Specifically, RG claims that *Cork* stands for the proposition that the auditors' work papers should not have been admitted in evidence over RG's hearsay objection. RG then asserts that *Cork* supports its position that the reciprocity agreements between plaintiffs and other unions superseded RG's obligation to pay contributions.

Rule 60(b)(6) is a catch-all provision that allows courts to provide relief from "a final judgment, order, or proceeding for...any other reason that justifies relief."[3] The rule may not be "used to reopen an adverse decision" without the showing of exceptional circumstances.[4] The rule is designed to allow courts to address mistakes due to special circumstances, in contrast to Rule 59(e), which allows a court to correct its own error of law.[5]

It should be noted that the Court has not yet entered final judgment. We will, nonetheless, address the substance of RG's motion.

---

[1] Dkt. 121.
[2] No. 07-3983, 2009 WL 1873516 (7th Cir. 2009).
[3] Fed.R.Civ.Pro. 60(b)(6).
[4] *West v. Schneiter,* 485 F.3d 393, 395 (7th Cir. 2007).
[5] *Equilease Financial Services, Inc. v. Fincastle Leasing, Inc.,* 305 Fed.Appx. 291, 294 (7th Cir. 2008).

**I.     Admissibility**

As aptly pointed out by plaintiffs, in contrast to RG's position, the *Cork* decision supports this Court's evidentiary rulings. *Cork* was also an action to collect contributions owed to employee benefit plans and one which this Court relied upon in its findings issued on June 16, 2009. Similar to this case, *Cork* involved an employer that did not keep proper records, notwithstanding its contractual obligation to do so. The auditors, thus, "applied a set of assumptions to the data available to them and prepared what is known as a Report On Agreed-Upon Procedures, with the "procedures" being the assumptions..."[6] Like here, the audit attempted to determine the extent of the employer's outstanding liability to the funds. At trial, Judge Schenkier admitted the audit report into evidence and permitted a partner of the audit firm to testify about the report.[7]

On appeal, the employer argued that the district court incorrectly admitted the audit report into evidence because it was founded on inadmissible hearsay.[8] The employer also claimed that it could not otherwise be admissible as a business record because the report was prepared in anticipation of litigation.[9] In response, the Seventh Circuit found that there was "no merit to this argument."[10] The court held that the assumptions applied in preparing the report were "very important in assessing the validity of the report's assertions" as to what the employer owed to the funds. To further explain the point, the court found that,

> the fact that those assumptions were conveyed to the auditors in out-of-court discussions is neither here nor there: the content of those discussions was not being offered into evidence, let alone for its truth, nor was it necessary to recount such

---

[6]*Cork Plastering Co.,* No. 07-3983, 2009 WL 1873516, *4.
[7]*Id.* at *5.
[8]*Id.* at *7.
[9]*Id.*
[10]*Id.* at *8.

> conversations in order to evaluate the merit of any assumption that [the auditors] employed.[11]

The court then went on to note that auditors are often asked to analyze data based on a set of assumptions. Further, the assumptions in the *Cork* audit were not a secret, the auditor was deposed before trial about the nature of the assumptions, and the assumptions were, in fact, derived from what the employer's own records disclosed - or failed to disclose - about its methodology in reporting hours and making contributions.[12] As a final point, the court held that

> [i]t was that evidence, and not the content of any out-of-court communications between [the auditors] and its clients, that led Judge Schenkier to accept some of the assumptions as accurate and to reject others as unsubstantiated.[13]

There was, therefore, no error in admitting the report simply because it reflected those assumptions.

The circumstances in *Cork* are strikingly similar to what happened here. We, therefore, see no basis for RG's contention that this ruling, somehow, warrants a different outcome. First, as noted by plaintiffs, the relief RG seeks does not even relate to this Court's June 23, 2009 Order. With respect to the admissibility of the audit papers, that was a decision made at trial and reflected in the Court's June 16, 2009 findings. Second, and more to the point, as stated by the Seventh Circuit, the fact that the audit report reflected assumptions did not determine its admissibility. We recognized this point prior to *Cork,* when RG's objection was overruled at trial. At trial I stated that,

> the Seventh Cicuit has found that an audit is certainly not inadmissable as a record because there are assumptions in the audit report...[o]f course, whether the Court will credit all of those assumptions remains the $64,000 question in this case.[14]

---

[11]*Id.*
[12]*Id.*
[13]*Id.*
[14]T.T. at 247-48.

As occurred in *Cork*, the validity of the auditors' assumptions was debated at trial and in light of the testimony and other evidence presented, this Court accepted the auditors' assumptions as accurate.

The court in *Cork* next addressed, and rejected, the employer's contention that the report should have been excluded because it was prepared for purposes of litigation and was not made or kept in the ordinary course of business. The court acknowledged that the report itself may not have been a business record but, the court held, it was admissible "as a summary of voluminous business records."[15]

Here, RG seems to hang its hat on the Seventh Circuit's mention that the employer in *Cork* did not contest the accuracy of the data that the auditors pulled from their records, and that is why the audit report was admitted. This reading of *Cork,* however, misses the mark. After stating that the employer did not contend that the underlying data was inaccurate, the Seventh Circuit went on to explain that the employer's

> quarrel has always been with the assumptions that the auditors applied to the data. As we have discussed, those assumptions were fully aired and their validity was assessed by the court on the totality of the evidence. To the extent a given assumption was found to be invalid, the court rejected the report's application of that assumption.[16]

The same occurred in this present case. Despite RG's argument here, at trial it did not so much quarrel with the accuracy of the data used by plaintiffs' auditors but, rather, its quarrel was "with the assumptions that the auditors applied to the data."[17] Put simply, RG was not making the case that the auditors inaccurately transcribed data from its payroll records or that it made computational

---

[15] *Id.* at *9.
[16] *Id.*
[17] *See id.*

errors. It was, throughout the entirety of the trial, challenging the auditors' methodology in order to support its position that a different methodology would have been better. *Cork,* therefore, leaves no reason for this Court to revisit its ruling on RG's objections to the admissibility of the audit report.

For completeness, however, it should be noted that RG points to one computational error elucidated at trial. During cross examination of plaintiffs' auditor, John Stoeckert, RG referenced an error made where 501 hours were reported for a particular employee for one month of work.[18] Mr. Stoeckert admitted that this was, indeed, an error. But Mr. Stoeckert also immediately confirmed that this error had been corrected in a later draft of the audit report.[19] In fact, as we noted in our June 16, 2009 Order, there was consistent testimony at trial that when new information was presented - or inaccuracies were made known - the auditors accounted for any changes in calculations provided that records supported those findings.[20] Essentially, RG's position is that, because it minimally disputed computations found in the audit work papers, those work papers should not be admissible as a summary of business records. This misses the point. As noted in *Cork,* the audit in that case was simply a summary of the employers *own payroll records*.[21] Data lifted out of regular business records are admissible and it follows, then, that summaries of that data are admissible.[22] Here, too, the audit is a summary of RG's payroll records (at least of those that RG had kept) and assumptions based off those records for time periods where no records existed. RG has directed us to nothing in

---

[18]T.T. at 175.
[19]T.T. at 175-76.
[20]*See* T.T at 117-18; 754; 780; 785-86.
[21]*Cork Plastering Co.,* No. 07-3983, 2009 WL 1873516 at *9.
[22]*Id; see also AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.,* 896 F.2d 1035, 1045 (7th Cir. 1990).

*Cork* that would support its position that such a summary is inadmissable. RG's motion on this point is, therefore, denied.

**II.     Reciprocity**

RG next claims that *Cork* supports its position that the reciprocity agreements between plaintiffs and other unions, specifically Locals 11, 74, and 56, superceded RG's obligation to pay contributions to plaintiffs for members of those unions working in its territory. Plaintiffs assert, in contrast, that *Cork's* discussion of reciprocity agreements has no import upon this case.

The Seventh Circuit discussed the reciprocity agreements in *Cork* when laying out the factual background of the case. The court explained that one agreement in the case required the employer to pay benefits directly to a worker's union (his or her "home local") rather than paying contributions based on the territory in which the work was performed.[23] So regardless of where the employee was performing the work, payments were made to the union representing the particular employee (known as the "money-follows-the-man" rule).[24] There were also reciprocal agreements with other unions, whereby one union would forward contributions received for work performed within that union's jurisdiction (by members of other unions) to funds affiliated with the "home locals" of those workers. In *Cork*, the reciprocity agreements required the plaintiff funds to send contributions collected for two other unions - Locals 56 and 74 - working in the plaintiff union's territory back to the Local 56 and 74 funds.[25] The reciprocal agreements, however, did not alter the

---

[23]*Id.* at *2.
[24]*Id.*
[25]*Id.* at *3.

employer's obligation to make contributions for work based on the location of the work that was performed.[26]

The nuance in *Cork,* which we do not have in the present case, is that the employer had improperly paid contributions to the Local 56 and 74 for all hours that their members had worked (having made contributions based on the home local of each employee rather than the location of the work performed). So the reciprocity agreements mooted the plaintiff union's claim for contributions with respect to those two funds.[27] Here, however, there is no evidence that RG had improperly paid contributions according to the local union membership of the employee rather than by the location of the work performed. In fact, that issue was never even mentioned at trial. So any reciprocity agreement in place would not matter because it would not moot a claim for contributions. As noted by plaintiffs, any agreement between the Funds would simply require Local 5 to turn over any contributions recovered to that particular fund with which it had the agreement. But it would not negate RG's obligation under the collective-bargaining agreements to make the proper contributions to the Funds.

---

[26]*Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.,* No. 03-6867, 2007 WL 6080197, *4 (N.D. Ill. August 27, 2007).

[27]*Cork Plastering Co.,* No. 07-3983, 2009 WL 1873516 at *3-4.

### III.    Conclusion

RG's Rule 60(b)(6) motion is denied [dkt 123].  RG is, however, given additional time, to August 7, 2009, to file its response to plaintiffs' supplemental submission on damages.


**IT IS SO ORDERED.**

**ENTERED: July 24, 2009**                                   _____
                                                             SUSAN E. COX
                                                             United States Magistrate Judge