UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trustees of the Chicago Plastering Institute Pension Trust, the Chicago Plastering Institute Health and Welfare Trust, the Journeymen Plasterers' P.&B. Society Local No. 5 Apprentice Fund, the Chicago Plastering Institute, by and through John Manley and as agent for the Chicagoland Construction Safety Council and the Journeymen Plasterers' Protective and Benevolent Society of Chicago Local No. 5, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05 C 5669 |
| vs. | ) ) | Magistrate Judge Susan E. Cox |
| R.G. Construction Services, Inc., | ) ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

On June 16, 2009, after a week long bench trial and the submission by the parties of their proposed findings of fact and conclusions of law, this Court entered its findings and conclusions on liability, pursuant to Federal Rule of Civil Procedure 52. In that ruling we found in favor of plaintiffs and against defendant, R.G. Construction Services, Inc. ("RG") for contributions owed to employee benefit plans.[1] Now before the Court are the parties supplemental statements on damages. For the reasons outlined below, we now enter judgment in favor of plaintiffs in the amended amount of $1,208,635.36. The Court assumes familiarity with its June 16, 2009 ruling and uses those same abbreviations here.

---

[1] *Trustees of Chicago Plastering Inst. Pension Fund v. R.G. Construction Services, Inc.,* No. 05 C 5669, 2009 WL 1733036 (N.D. Ill. June 16, 2009).

**Analysis**

Plaintiffs claim that they are entitled to $1,208,635.36 (as amended from their original claim of $1,232,352.02) in damages, in addition to their reasonable attorneys' fees, pursuant to 29 U.S.C. §1332(g)(2). Their damages calculations consists of claims for: (1) delinquent contributions and dues; (2) interest on all delinquent contributions; (3) double interest on delinquencies to ERISA funds; (4) liquidated damages on delinquencies to non-ERISA funds; (5) prejudgement interest on dues, and; (6) auditors' fees.

In its most recent response, RG argues that the plaintiffs' claim for damages should be reduced by $262,829.65. (This is the number the Court calculated after adding up all of the individual reductions RG has requested. Though it should be noted that RG's sur-reply brief, in contradiction, claims that plaintiffs have only overstated their damages by $185,423.41). RG's requested reductions are for: (1) hours worked by Mike Molloy when he was an estimator (because such work is not covered by the Local 5 CBA); (2) bonus hours; (3) claims for Robert Frustini, Robbie Marshall and Tomas Tunkevicious, for time accounted for with paystubs; (4) findings on dues that do not have authorizations; (5) hours worked in Kankakee; (6) hours for certain alleged Lake County plasterers; (7) prejudgment interest; and (8) audit fees. The court will briefly address each requested reduction.

**A.    Hours worked by Mike Molloy**

First, RG argues that plaintiffs improperly included hours for Mike Molloy in the Final Audit Report. Plaintiffs assert, however, that they already removed all Molloy hours for the period of time he worked as an *estimator* because plaintiffs agree that Mr. Molloy's hours as an estimator, a non-covered position, should not be included in the audit report. But, plaintiffs contend, the period from

April 1995 to May 1996 show that RG reported him as a plasterer and that he was, in fact, performing plastering work. Plaintiffs also point to support in the record for this contention.[2] RG, in contrast, does not offer any support for its claim, other than the blanket statement that this Court ordered Plaintiffs to remove claims on behalf of Mr. Malloy. We did. But plaintiffs have already complied by removing Mr. Molloy's non-covered hours, when he worked as an estimator. The Court, therefore, denies RG's request to reduce damages in the amount of $3,853.51 for findings attributed to Mr. Molloy.

**B.     Bonus Hours**

Second, RG argues that plaintiffs have not sufficiently removed bonus hours from the audit report. Specifically, the dispute comes down to whether plaintiffs' reduction of $15,964.36 for bonuses paid to Mark Johnson, Steven Nelms, and John Shannon, is correct. Or, whether RG's claim that the reduction should be $16,513.98 is correct. From the submissions of the parties, the court is unable to determine which calculation is correct, but the difference amounts to only $549.64. RG does not attempt to explain the discrepancy. Plaintiffs only provide that the bonus received by Mr. Nelms was only $3,000, not the $5,000 alleged by RG. Plaintiffs also provide a document that lists RG's bonuses, a document that was originally produced during the audit and at trial. It shows Mr. Nelms' bonus for that year to be, in fact, $3,000. (In a footnote, separate from their argument on bonus amounts but in the same brief, RG agrees that Mr. Nelms' bonus was $3,000 in 1999. In that footnote, RG then asserts that $75.39 should be removed from plaintiffs' damages, not $549.64. This could not be more confusing.) Because plaintiffs have provided support for their position, the Court will adopt plaintiffs' calculations. RG's request for a further reduction is, thus, denied.

---

[2]T.T. at 554; T.T. at 564; PX 3 at 6960.

### C. Paystubs

Third, RG claims that plaintiffs failed to remove all hours in the unknown period accounted for by paystubs, specifically with respect to Robert Frustini, Robbie Marshall and Tomas Tunkevicious. RG identifies the paystub amounts in exhibits it attaches to its response brief. These exhibits are RG's recreation of the auditors' Final Audit Report. In these documents, RG has highlighted items (*e.g.* hours and amounts) that it claims should be removed. With respect to paystubs, RG asserts that 43.25 hours should be subtracted, warranting a reduction in damages of $1,270.30. The problem is, we have no idea how, or whether these paystubs were already accounted for in some way in plaintiffs' calculations for the unknown period. So again, what RG is asking the court to do is that which is more appropriately left to an auditor. We simply cannot redo the audit to determine if a more beneficial calculation, applying these paystubs, could be obtained. As explained by plaintiffs, RG presented paystubs for these individuals for certain time periods in the unknown period, but those paystubs did not eliminate the possibility for delinquencies. So the auditors were left to make an estimated determination. We must refer back to what we stated previously,

> without complete payroll records some assumptions had to be made. And because assumptions were made, the audit lacked "'the exactness and precision of measurement that would be possible had [RG] kept records...'"[3] That fact does not warrant a rejection of the auditors' findings.[4]

The court, therefore, denies RG's request to reduce the audit report by $1,270.30.

### D. Dues Authorizations

---

[3] *Laborers' Pension Fund v. Loucon Construction, Inc.,* 2004 WL 2538298, *7 (N.D. Ill., Sept. 28, 2004) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 688 (1946).
[4] *Trustees of Chi cago Plastering Inst. Pension Fund v. R.G. Construction Services, Inc.,* No. 05 C 5669, 2009 WL 1733036, *11 (N.D. Ill. June 16, 2009).

Fourth, RG requests a reduction in damages of $5,796.51 for findings on dues without authorizations. Plaintiffs have already, however, conceded that the auditors inadvertently failed to remove claims for 38 individuals and, as a result, have since reduced the final audit by $4,039.27 in dues and $3,713.87 in pre-judgment interest. The Court finds no reason to mis-trust plaintiffs' calculation, nor has RG presented us with any reason to do so. It appears, rather, that RG continues to request this reduction solely on the basis of what RG claims is "plaintiffs' misrepresentation." That would, however, be unnecessarily punitive. Because plaintiffs have already removed these claims from the final audit, RG has received its requested reduction. The Court, therefore, denies RG's request to further reduce damages in the amount of $5,796.51.

**E.      Kankakee Hours**

Fifth, RG submits that $102,971.65 should be removed from plaintiffs' damage calculation for findings attributed to 2,148.25 hours performed and paid in Kankakee. But RG fails to explain why these hours should be removed. It appears that, again, RG expects the court to sort through RG calculations (that RG attached to its damages submission) and simply remove what RG has *highlighted* as hours worked in Kankakee.

Plaintiffs explain that the issue of possible Kankakee hours only surfaced at the end of trial, when RG presented plaintiffs' counsel with two new, illegible, documents asserting that RG made contributions to another union for work performed in Kankakee. Those documents were only conditionally admitted into evidence just prior to closing arguments and there was no stipulation to remove additional hours based on those documents.[5] The only discussion relating to this issue was, in fact, during closing arguments and went as follows:

---

[5]*See* T.T. at 995.

> THE COURT: And what about the further reduction which gets us to about 10,000 hours based on these other Kankakee –
> MS. VOYLES: Well there's a couple of issues with that, if I can address --
> THE COURT: Yes.
> MS. VOYLES: Number one, there's no evidence -- first of all, there's no evidence in the record about Kankakee hours. Those were hours that we were presented with on Friday. I have asked for them to give us those documents in a way we can read them, because some of them, we can't. But I think we would take those out.
> THE COURT: Okay. If they show what they show?
> MS. VOYLES: But the problem is, I don't know enough about it just from a document to agree with the proposition that they should come out.
> THE COURT: Because they were delivered to you so late.
> MS. VOYLES: Right. And they're Bricklayer reports, and they're not a 56/74 report. They've given us some additional information this week about them; but again, I can't really -- I can't analyze them --
> THE COURT: You can't address it right now, but you have an open mind as to subtracting them out should –
> MS. VOYLES: Absolutely, if we can figure out that they should come out.[6]

It is apparent that plaintiffs determined that the Kankakee hours should not come out. Plaintiffs explained their reasoning: there was no foundation for the documents RG provided them and the documents were nearly illegible. Without more, and at this point in the litigation, we are in no position to question that determination. That is what the trial was for, which has long since passed. We, therefore, deny RG's request for a $102,971.65 reduction in damages.

**F.     Lake County Plasterers**

Sixth, RG objects to the inclusion of 588 hours related to purported Lake County Plasterers Gene Mullowney, Roy Dickson, Sr., and Richard A. Goodwin. RG bases this claim on the "money follows the man" rule, whereby benefits are directly payable to a plasterer's home local funds, regardless of the geographical jurisdiction in which the work is performed. Without any context provided, RG references certain trial exhibits where the three individuals' names appear listed, along

---

[6]T.T. at 1008-09.

with other plasterers' names. It is true that next to some of these names, there is a handwritten notation "local 11."[7] But we have nothing more than this to support RG's position that these plasterers were actually Lake County Plasterers, as plaintiffs point out. Plaintiffs explain that Mr. Mullowney's dues authorization card actually predates any claims that he was a Lake County Plasterer, and RG presents no evidence with respect to the others. Plaintiffs then assert that even if RG had evidence that these three individuals were Lake County Plasterers, all Lake County hours have already been credited. Also noted by plaintiffs, the Court did not order the removal of claims for Lake County Plasterers. Put simply, there is not enough information here for the Court to determine that plaintiffs have improperly included Lake County hours. We must, therefore, deny RG's request for a $30,088.93 reduction in damages for findings attributed to Lake County Plasterers.

## G. Prejudgment Interest

Seventh, we move to RG's contention that plaintiffs should not be awarded prejudgment interest because plaintiffs delayed the proceedings and due to a comment made by plaintiffs' counsel during trial, where she stated that damages were "a constantly moving target."[8] The Seventh Circuit adopted the proposition that pre-judgment interest is presumptively available to victims of federal law violations.[9] The purpose of prejudgment interest is to provide a complete remedy; that is, to make whole a party which would have had access to the money had it not been for the actions of the other party, and which would presumably have invested the money or otherwise obtained some return on it.[10]

---

[7] *See* PX 3 at 104;146;148.
[8] *See* T.T. at 204.
[9] *Gorstein Enterprises v. Quality Care-USA,* 874 F.2d 431, 436 (7th Cir. 1989)
[10] *West Virginia v. United States,* 479 U.S. 305, 310-11 n.2 (1987).

RG cites *Empire Gas Corporation v. American Bakeries Company,* where the court found prejudgement interest inappropriate because up through the jury's verdict "it was entirely unclear what Empire Gas's loss had been..."[11] That extreme is not found here. Even in that case, the court distinguished itself from the "general trend toward giving winning plaintiffs something closer to full compensation."[12] More closely analogous, rather, is *Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.* ("*Cork I*"), where the district court similarly found the defendant to have failed to remit union dues, that should have been paid long before, and held that declining an award of prejudgment interest would only "allow [the defendant] to retain some of the benefit of improperly withholding these dues for many years, and we would fail to fully compensate Local 5 for its loss."[13]

We also wholeheartedly reject RG's contention that plaintiffs delayed proceedings, warranting a denial of prejudgment interest. As aptly stated by plaintiffs' counsel, damages were, indeed, a moving target. But that was only because RG continued to provide additional information, through the entire trial no less. RG's request for a removal of $16,579.13 in prejudgment interest is, therefore, denied.

---

[11] 840 F.2d 1333, 1342 (7th Cir. 1988).
[12] *Empire Gas Corp.,* 840 F.2d at 1342.
[13] No. 03 C 6867, dkt. 128 (N.D. Ill. November 14, 2007).

**H.  Audit Fees**

Eighth, the last issue for the Court to address is RG's request that we deny plaintiffs' audit fees in the amount of $101,720.00 or, in the alternative, allow RG an opportunity to cross examine the auditors. RG argues that the records kept by the auditors are insufficient to support their requested costs. RG also claims that plaintiffs have shown themselves to not be credible (and, thus, the Court should discredit them) because they have admitted that they inadvertently missed removing certain hours and have since had to amend their findings. Plaintiffs respond that it is within the discretion of the court to determine the level of detail required to support the audit costs and assert that the summary they provided is sufficient.

ERISA grants the district court authority to award plaintiffs their reasonable attorney's fees and costs in actions to collect unpaid fringe benefit contributions, specifically providing for "such other legal or equitable relief as the court deems appropriate."[14] This provision has been construed to include an award of audit costs.[15] Plaintiffs have the burden to show that audit costs should be awarded and that the specific costs requested are reasonable.[16]

Here, again, we are guided by our colleague's decision in *Cork I,* noted above, and affirmed by the Seventh Circuit ("*Cork II*").[17] In that case, the court denied the award of audit costs, holding that though it "had no reason to doubt that plaintiffs' records accurately state the time the auditors devoted to this matter," the plaintiffs nonetheless failed to disclose: the background or experience

---

[14] 29 U.S.C. §1132 (g)(2)(D) & (E).
[15] *Trustees of the Chicago Plastering Institute Pension Trust, et al. v. Cork Plastering Co.,* 570 F.3d 890, 902 (7th Cir. 2009).
[16] *Chicago District Council of Carpenters Pension Fund v. Sciortino Contractors,* 934 F.Supp. 277, 279 (N.D. Ill. 1996).
[17] No. 03 C 6867, 2007 WL 3449493, *2 (N.D. Ill. November 14, 2007)(*aff'd,* 570 F.3d 890 (7th Cir. 2009)).

of the 12 individuals who performed the audit work; the rates at which they were billed; or what work each auditor performed and on which date.[18] RG argues that because *Cork I* involved the same plaintiffs, the same auditors, and occurred only two years prior to this case, this case should warrant the same outcome. It would appear, however, that plaintiffs and, thus, the auditors have made efforts to improve their supporting documentation. Because RG has provided little more than this general argument, we are left to determine whether plaintiffs' support is sufficient under the standard outlined in *Cork I* and the Seventh Circuit's review of that case.

In *Cork I*, the court specifically noted Mr. Gebis' statement that P&G auditors did not make contemporaneous records and that P&G did not "maintain records, of the particular audit tasks in which each auditor is engaged for each of the hours indicated in P&G's billing records."[19] The court found that lack of detail unacceptable because it was unable to ascertain "what work each individual did on a given day," whether there was "unnecessary duplication of efforts," or whether the hourly rates were reasonable.[20] Here, in contrast, Mr. Gebis' declaration provides that each individual that worked on the RG audit maintained "a contemporaneous record of how much time he or she is engaged in work on a particular matter each day." Though, he stated, "P&G's auditors do not make contemporaneous records of the particular audit task they perform on a given day..."[21] With the information that he had, and for purposes of this case, Mr. Gebis prepared a spreadsheet breaking down each task the auditors' performed and separated out which auditors performed those tasks.[22]

---

[18]*Cork,* No. 03 C 6867, 2007 WL 3449493 at *2.
[19]*Cork,* No. 03 C 6867, 2007 WL 3449493 at *2.
[20]*Id.*
[21]Pl's suppl. Submission on Damages, Exh 1, ¶18.
[22]Pl's suppl. Submission on Damages, Exh 6.

RG, however, makes the blanket statement that the auditors did not maintain contemporaneous records and refers to Mr. Gebis' spreadsheet, which, they note, was created much later. The problem is, plaintiffs are not disputing that fact. Plaintiffs concede that Mr. Gebis' spreadsheet is an after-the-fact summary of the business records that his firm keeps in the normal course of an audit. What RG fails to acknowledge is that plaintiffs' submissions in support of this audit are not the same as the submissions they provided in *Cork I*. To be specific, here plaintiffs have provided the credentials of the auditors that worked on the RG audit, their billing rates, and an itemization of each of the auditor's work by specific date.[23] None of that was submitted in *Cork I*.

Because RG does not quarrel with the credentials or the billing rates of the auditors, the Court has no reason to believe them to be unreasonable. The Court is, however, faced with at least one of the same problems as was seen in *Cork I*. Even with the additional details provided by plaintiffs, we are still unable to determine whether there was unnecessary duplication of efforts. For example, the way Mr. Gebis outlined the auditors' time there may be several days where three accountants calculated "hours worked from SUTA's received," but we only know the total hours from each of those days, for all three individuals.[24] We also know that certain tasks completed by Mr. Gebis and Mr. Stoeckert were billed at a higher rate, for work that was "beyond routine work on the audit, such as depositions and preparing for and testifying at trial."[25] Those hours are not delineated from the other hours completed. The inability to see a more detailed breakdown makes it difficult to determine whether a duplication of efforts, for example, occurred. But these are not criticisms made by RG. These are simply observations made by the Court.

---

[23] Pl's suppl. Submission on Damages, Exh 1.
[24] Pl's suppl. Submission on Damages, Exh 6.
[25] Pl's suppl. Submission on Damages at 7.

Nonetheless, for purposes of a full analysis we continue our discussion. The standard outlined by the Seventh Circuit in *Cork II* was that it is reasonable to expect specific itemization from auditors because that information,

> enables the court to both assess the overall reasonableness of the compensation requested and, if the court believes the total fees were too high, to have a reliable basis for reducing the fee award by denying compensation for the time that was not well spent or reducing compensation for time that was billed at excessive rates.[26]

The court also noted, however, that itemization may not be necessary in all cases, such as where an audit was "straightforward," or where "the total hours devoted to the audit was low."[27] We certainly do not have that here, where the audit required more than 1,000 hours of work, involved calculations for large periods of time with missing data, and was constantly being updated due to the never-ending supply of documentation - even during the trial - from RG. In these more complicated cases, as *Cork II* held, it would be reasonable for the court to "expect more detailed records in support of the costs requested," such as the kind of detail that is "routinely expected in support of attorney-fee requests."[28]

But the glaring problem in this case remains that RG has not presented any reason to doubt what plaintiffs have already provided. This is true even if the submissions do not have the kind of specificity documented by attorneys, such as "contemporaneous time records that 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'"[29] It is not the Court's job

---

[26]*Cork Plastering Co.,* 570 F.3d at 905.
[27]*Id.*
[28]*Cork Plastering Co.,* 570 F.3d at 906.
[29]*King v. JCS Enterprises, Inc.,* 325 F.Supp.2d 162, 166 (E.D.N.Y. 2004); *see also Bretford Mfg. Inc. v. Smith system Mfg. Co.,* 421 F.Supp.2d 1117, 1119 (N.D. Ill. 2006)(stating that a district court "may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks'" quoting *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998)).

to argue RG's case for it and, as has been held by this circuit, a court need not scour the record in search of a basis to support a party's position.[30] Without any suggestion from RG as to how many auditors would be appropriate to calculate, for example, hours worked from SUTA's received, or how long it should take to complete any particular task, it is unclear where RG "draws the line of excessiveness."[31] As we have pointed out in our prior rulings on this matter, the Court is not an auditor and is in no position to scrutinize, without more from RG, whether specific audit work was reasonably necessary at the time.[32] We recognize that district courts have broad discretion in making attorney's fee awards (and, likewise, awards for audit costs) and in determining reasonableness, but the exercise of this discretion is, in part, because "the court may rely on its own experience to estimate the time reasonably required for the work claimed."[33] When the question is work performed by auditors, not lawyers, the assessment is quite different.

Consequently, without a more specific, supported, objection from RG, and because plaintiffs have met their burden under *Cork II* by providing significant detail explaining their audit costs, we deny RG's request to remove from plaintiffs' damage calculation $101,720.00 in audit fees. We also must reject RG's claim that, somehow, because the auditors had to amend their findings due to inadvertent errors, they are no longer credible.

---

[30] *See Argyropoulos v. City of Alton,* 539 F.3d 724, 740 (7 Cir. 2008)(noting that a court will "not scour a record to locate evidence supporting a party's legal argument" quoting *Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005)).
[31] *See A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plubming Contractors' Assoc. And Chicago Journeymen Plumbers' Local Union 130, U.A.,* 562 F.3d 784, 793 (7th Cir. 2009).
[32] *Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir. 1986)(noting that judicial monitoring is "necessarily imprecise" and the judge cannot readily see "what legal work was reasonably necessary at the time.").
[33] *Vocca v. Playboy Hotel of Chicago, Inc.,* 686 F.2d 605, 607 (7th Cir. 1982).

## Conclusion

In conclusion, we award plaintiffs the amended amount of $1,208,635.36. On or before October 14, 2009, plaintiffs shall submit their bill of costs. Postjudgment interest on this amount, as calculated pursuant to 28 U.S.C. §1961(a), will apply from June 16, 2009 until full payment is made.

**IT IS SO ORDERED.**

**ENTERED:** September 30, 2009

**UNITED STATES MAGISTRATE JUDGE**
**Susan E. Cox**